# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| ROBERT BAYLY, | : |
| Claimant Below-Appellant, | :  C. A. No. S24A-05-002 CAK |
| v. | : On Appeal from Industrial |
| | : Accident Board Decision dated April 30, |
| | : 2024, IAB No. 1513116 |
| RED HOUSE MOTORS, | : |
| d/b/a BAYLY'S GARAGE, | : |
| Employer Below-Appellee. | : |

Submitted:  April 8, 2025

Decided:  May 6, 2025

*On Appeal from the Industrial Accident Board*

**REVERSED**

**MEMORANDUM OPINION AND ORDER**

Elissa A. Greenberg, Esquire, Elzufon Austin & Mondell, PA, 300 Delaware Avenue, Suite 1700, Wilmington, DE 19801, Attorney for Claimant-Appellant.

Geoffrey S. Lockyer, Esquire, Tybout, Redfearn & Pell, 501 Carr Road, Suite 300, Wilmington, DE 19899, Attorney for Employer/Carrier-Appellee.

**KARSNITZ, R.J.**

## PROCEDURAL BACKGROUND

This is an appeal from a decision dated April 30, 2024 (the "Decision") of the Delaware Industrial Accident Board (the "Board"), which dismissed a Petition to Determine Compensation Due dated April 3, 2023 (the "Petition") filed by Claimant-Below, Robert Bayly ("Appellant") after accepting a claim made by Federated Reserve Insurance Company ("Carrier") that Appellant was not covered under a workers' compensation policy issued by Carrier to Employer-Below, Red House Motors, d/b/a Bayly's Garage ("Employer"). (Either Carrier or Employer may be referred to herein as "Appellee").

Appellant filed the Petition seeking compensation under the Delaware Workers' Compensation Act (the "WCA") for injuries sustained during a workplace assault. On October 2, 2023, Carrier filed a Motion to Dismiss the Petition (the "Motion to Dismiss") on the grounds that Appellant was precluded from receiving benefits for his injuries as a sole proprietor because he did not elect coverage for himself.[1] Litigation before the Board was bifurcated to address the coverage issue apart from the merits. Both parties presented their full evidence on the coverage issue at a Board hearing held on April 24, 2024. In its Decision, the Board granted the Motion to Dismiss. On May 28, 2024, Appellant timely appealed the Decision to this Court.

---

[1] Under 19 *Del. C.* § 2308(b) and 19 *Del. C.* § 2306(b), both as discussed more fully herein.

On November 26, 2024, Appellant filed his Opening Brief. On February 6, 2025, Appellee filed its Answering Brief. On February 21, 2025, Appellant filed his Reply Brief. I held oral argument on April 8, 2025. This is my decision on appeal.

**FACTS**

Appellant is the sole proprietor of Employer. On June 16, 2021, while working at Employer, Appellant was assaulted by a temporary employee. He sustained serious injuries including, but not limited to, the loss of eyesight in his left eye, a broken jaw, a fractured rib, neck injuries, and facial numbness.

There is no factual dispute that, at the time of the work accident, Employer was insured under a workers' compensation policy issued by Carrier covering workplace injuries of Appellant's employees ("Employees"). The workers' compensation policy covering Employer was part of a comprehensive insurance package which Appellant purchased from Carrier in 2008. The insurance package automatically renewed each year including, *inter alia*, the workers' compensation policy covering Employer. Carrier sent audit forms annually to Appellant so that Carrier could adjust the amount of Appellant's premiums for the policies in the package. The audit forms properly identified Appellant as a sole proprietor but instructed him to regard himself as an Employee. The audit forms also asked for all Employees' gross salaries. Appellant's accountant provided the requested financial information for the audit to Carrier. Appellant's wife was a salaried Employee of

3

Employer, but Appellant was not.[2] As a sole proprietor, he took draws against the business instead of a salary.[3] Therefore, the audit forms' instructions did not request inclusion of Appellant's income.

Carrier was aware of Appellant's sole proprietor status when the package of policies was purchased. Nowhere in the insurance policies or in the annual audits did Carrier inform Appellant that he was uninsured for workers' compensation benefits for his own workplace injuries.

Since initiating his policies with Carrier in 2008, Appellant had never filed a workers' compensation claim until the accident in question. The only prior claim involved property damage to his building. When Appellant reported his work accident to Carrier, Carrier informed him that he was not covered, issued him a partial refund for his workers' compensation premiums in the amount of $3,085.96, and cancelled his workers' compensation policy.

### THE BOARD HEARING

The dispute in this case stems from Carrier's claim that coverage under the Employer's workers' compensation insurance policy did not extend to Appellant as the sole proprietor of Employer. Carrier argued at the Board hearing that that Appellant, as a sole proprietor, failed to elect workers' coverage for himself under 19

---

[2] Transcript of the April 24, 2024, Board Hearing, at 47, 54-57.
[3] *Id*.

*Del. C.* § 2308(b). Carrier stated that, if a sole proprietor wants to be covered under his business' workers' compensation policy, he does not have to purchase an additional workers' compensation policy. However, Carrier's internal procedure for extending coverage to a sole proprietor requires the sole proprietor to (1) inform his authorized insurance agent that he affirmatively elects coverage, and (2) complete a prescribed form. In this case, argued Carrier, nothing in the record indicated that Appellant had informed it of an election for coverage, and there was no election form in the record completed by Appellant.

Carrier relied on the testimony of its insurance analyst that Appellant never elected coverage for himself as sole proprietor. The analyst did not see any written documentation in the file about Appellant's workers' compensation coverage expectations. But he confirmed that, to ensure personal coverage, Appellant had to inform his agent that he wished to be covered and complete a form required by the Delaware Compensation Rating Bureau ("DCRB"). The analyst said it was Carrier's responsibility to send Appellant this form.

Appellant testified that he expressly told an authorized insurance agent of Carrier that he wanted such personal coverage for himself as sole proprietor. In selecting the insurance policies, Appellant stated that he relied on information and representations made by an insurance agent authorized by Carrier to sell its insurance products. However, the whereabouts of that particular agent are now unknown, and

5

he was unavailable to provide testimony or other evidence at the Board hearing. The Board found as a matter of fact that Appellant did not elect coverage.

Carrier sold Appellant an Executive Professional Liability ("EPL") insurance policy (the "EPL"). The EPL was contained in Appellant's insurance package which contained multiple policies, including the workers' compensation policy. Appellant testified that he thought the EPL provided the personal/sole proprietor workers' compensation coverage he had requested. However, if strictly construed as written, the EPL only covered Appellant in the event of kidnapping, invasion of property, carjacking, or child abduction. These are very limited workplace events compared to the broader workplace events covered by the WCA.[4] The EPL nonetheless contemplates the consequences of injuries sustained at work, and the benefits under the EPL included compensation for lost wages, medical treatment expenses, and permanent impairment, which look very much like benefits under the WCA and a workers' compensation policy.

In its Decision, the Board granted the Motion to Dismiss Appellant's Petition after finding that: (1) Appellant was an experienced businessperson who was aware that he needed to elect workers' compensation coverage for himself but had not done so, and (2) the workers' compensation policy unambiguously did not cover

---

[4] Moreover, as Appellant points out, the EPL had little practical utility for a small businessperson in Sussex County.

Appellant.

## ORAL ARGUMENT

During oral argument, the parties set forth many of the arguments they made in their appeal papers. However, Carrier/Appellee made a key concession during oral argument that is central to my decision in this case: although Appellant as a sole proprietor must affirmatively elect personal coverage under a workers' compensation insurance policy, that election does not have to be in writing or on a prescribed Carrier or DCRB form, but may be an oral statement to the Carrier's agent.[5] Carrier did not make this concession before the Board. The reason I find this concession so important is that the Board in its Decision was not clear as to whether it imposed a requirement that the election be in writing. The Board commented on this issue several times.

On page one of the Decision in describing Carrier's argument the Board said:

[Carrier] argues that [Employer] employs a few employees and obtained a workers' compensation insurance policy as required by Delaware, but [Appellant] never elected to obtain coverage for himself *and never completed a sole proprietor coverage endorsement to the policy* … (Emphasis supplied)[6]

In its summary of Carrier's insurance expert's testimony, the Board attributed the following to him:

---

[5] Transcript of April 8. 2025 Oral Argument, page 26, lines 2 – 21.
[6] If Carrier was arguing that the completion of a written form was required, the argument was at odds with its position at oral argument.

7

[Appellant] needed to elect to be included in the coverage *and then fill out a form* that [Carrier] would have provided to him if he elected to be included based upon the DCRB underwriter's manual. (Emphasis supplied)[7]

Finally, in its own Findings of Fact and Conclusions of Law, the

Board said:

[Appellant] was aware that he needed to elect workers' compensation coverage for himself as a sole proprietor and have it included in an endorsement but did not actually elect to do so *or even send an internal email to [Carrier] or his insurance agent stating that he wanted to be covered.* (Emphasis supplied)

Although the Board never explicitly stated that Appellant's election had to

be in writing, the implication is there. The Board did not express the standard it

used. Carrier presented evidence to the Board that the DCRB manual required a

written form to elect coverage. Now it concedes that, under Delaware law, a sole

proprietor need not make the election in writing.

## STANDARD OF REVIEW

The appeal before me is on the record of the proceedings before the Board.[8]

My review is limited. I review the decision of the Board solely to determine whether

there is substantial competent evidence in the record to support the Board's findings

---

[7] Again, to me this testimony is contrary to the position taken by the Carrier at oral argument.
[8] 29 *Del. C.* §10142.

and whether its decision is free from legal error.[9]

I do not determine questions of credibility or make my own factual findings.[10] I view the facts in the light most favorable to the Board.[11] A ruling of the Board will not be disturbed on appeal unless it is based clearly on unreasonable or capricious grounds. The "Court gives significant weight to the [Board] regarding its application of legal principles in the specialized context of our state's workers' compensation scheme, because the [Board] has the occasion to give life to that scheme on a weekly basis in the many cases that come before it."[12] However, there are limited circumstances in which I may challenge the Board's factual findings.

In *Application of Delaware Racing Ass'n*, 213 A.2d 203 (Del. 1965), the Court of Chancery held an appraisal proceeding to value the stock of the Delaware Steeplechase and Race Association for short-form merger purposes. Dissenting shareholders appealed, arguing that every appeal is in effect a rehearing on both law and fact, and that it is the duty of the appellate court to review all the evidence and draw its own factual conclusions from the evidence independently of the findings below. Our Supreme Court disagreed, stating:

---

[9] *Johnson v. Chrysler Corp.,* 213 A.2d 64, 66 (Del. 1965); *General Motors Corp. v. Freeman,* 164 A.2d 686, 688 (Del. 1960); *General Motors Corp. v. Jarrell,* 493 A.2d 978, 980 (Del. Super 1985).

[10] *Id.*

[11] *Chudnofsky v. Edwards,* 208 A.2d 516, 518 (Del. 1965).

[12] *Berry v. MIRTA QSR KNE LLC,* 2021 WL 626944 (Del. Super. Feb. 16, 2021) citing *Christiana Care Health Services v. Davis,* 197 A.3d 391, 395 (Del. 2015).

> In substance, the rule as to scope of review is as it has always been, that it is our duty to review the evidence to test the propriety of the findings below. When the evidence consists primarily of depositions, documents, or the report of a master or appraiser, we may make our own conclusions, if the requirement of doing justice requires it and if the findings below are clearly wrong. Furthermore, when we are concerned with findings arising from deductions, processes of reasoning, or logical inferences, it is our duty to review them and, if the requirement of doing justice requires it and if the findings below are clearly wrong, then to draw our own inferences and reach our own conclusions. This is not to say, however, that we may ignore the findings below. On the contrary, when they are supported by the record and are the product of an orderly and logical deductive process, we, in the exercise of judicial restraint, accept them, even though independently we might have reached opposite conclusions.
>
> Certain it is that in every appeal we do not approach its decision as though we were trial judges facing the duty of determining facts initially. We search the record solely for the ultimate purpose of determining whether or not error in fact or law was committed below.

The Court affirmed the valuation of the Chancery Court below.

In *Levitt v. Bouvier*,[13] investors brought an action against individual defendant and a corporation for liability for fraud and misrepresentation. After a bench trial, this Court rendered judgment for the investors against the individual but in favor of the corporation. The individual defendant appealed and the investors cross-appealed. In reviewing the trial judge's findings of fact and affirming the decision below, the Supreme Court held:

> The trial judge made findings of fact. His findings were based upon consideration of the documentary evidence and the testimony and

---

[13] 287 A.2d 671 (Del. 1972).

credibility of "live" witnesses. In a nonjury case in which a Superior Court Judge sits as the finder of fact, an appeal from his decision is upon both the law and the facts. In such an appeal this court has the authority to review the entire record and to make its own findings of fact in a proper case. In exercising our power of review, we have the duty to review the sufficiency of the evidence and to test the propriety of the findings below. We do not, however, ignore the findings made by the trial judge. If they are sufficiently supported by the record and are the product of an orderly and logical deductive process, in the exercise of judicial restraint we accept them, even though independently we might have reached opposite conclusions. It is only when the findings below are clearly wrong and the doing of justice requires their overturn that we are free to make contradictory findings of fact.[14]

*Levitt* was ratified by the Supreme Court in *Levin v. Smith*,[15] a complex dispute about the impression of a trust on real property between family members. The Court stated:

In reviewing the factual findings of a trial judge, this Court may review the entire record and, when the findings of the court below are clearly wrong and the doing of justice requires their overturn ... we are free to make contradictory findings of fact. Here, after careful review of the record, we hold that the findings of fact and the inferences and deductions which the Trial Judge drew therefrom are clearly wrong and that justice requires a different result.[16]

The Court reversed and remanded with directions to the trial court to enter judgment in favor of appellant.

I review these cases because (1) the Board failed to articulate the standard it used (whether a writing was required), and (2) the Board's factual findings are

---

[14] *Id.* at 673 [Citations omitted].
[15] 513 A.2d 1992 (Del. 1986).
[16] *Id.* at 1301 [Citation omitted].

inconsistent with a reasonable review of the evidence.

As discussed more fully below and based on my review of the known facts in this case, I find that the findings of the Board are not sufficiently supported by the record and are not the product of an orderly and logical deductive process. In my view, the findings of the Board are clearly wrong and the doing of justice requires their overturn, so I am free to make contradictory findings of fact.

## ANALYSIS

As a threshold matter, an issue was raised by the parties on appeal regarding the interrelationship of two provisions of the WCA, 19 *Del. C.* § 2308(b) and 19 *Del. C.* § 2306(b).

19 *Del. C.* § 2308(b) provides:

Sole proprietors … are not included within this chapter, but such sole proprietor … may elect coverage in accordance with § 2306 of this title.

19 *Del. C.* § 2306(b) provides:

In all cases where an employer not subject to this chapter carries insurance to insure the payment of compensation to the employees, then in any and all such cases such employer and employees shall come under this chapter, and all of the provisions thereof, with the same force and effect as in cases where an employer is subject to this chapter.

It is undisputed in this case that Appellant had been paying workers' compensation insurance premiums to cover his Employees. The dispute centers on whether he properly elected to cover himself personally under the WCA.

12

Appellee argues that Appellant is not eligible to receive workers' compensation benefits for his injuries as a sole proprietor since he failed to elect coverage for himself pursuant to 19 *Del. C.* § 2308(b). Appellee further argues that Appellant is not eligible to receive workers' compensation benefits for his injuries solely because of carrying workers' compensation insurance for the injuries of his Employees pursuant to 19 *Del. C.* § 2306(b).

Appellant counters that 19 *Del. C.* § 2308(b) exempts Appellant as a sole proprietor from *all* requirements of the WCA, and as a sole proprietor he was not required to have *any* workers' compensation insurance for his Employees, unless coverage is elected thereunder. Since he so elected, 19 *Del. C.* § 2306(b) requires that everyone – Appellant as sole proprietor/Employer and his Employees -- must be recognized as covered under the WCA.

In my view, although these two sections of the statute may not be a model of clarity, part of the confusion lies in the difference between a "sole proprietor" and a "sole proprietorship." The latter term is not used in the statute. Appellant is a sole proprietor, and Employer is a sole proprietorship. One reading of the statute is that 19 *Del. C.* § 2308(b) provides that a sole proprietor like Appellant is excluded from the WCA, but not a sole proprietorship like Employer. However, 19 *Del. C.* § 2306(b) provides that if a sole proprietor like Appellant, otherwise excluded from the WCA, carries insurance to insure the payment of compensation to the Employees

13

of the sole proprietorship like Employer (as was the case here), and elects coverage for himself, then he and his Employees come under all the provisions of the WCA.

Another issue raised by the parties on appeal concerns the "reasonable expectations" of Appellant with respect to his eligibility to receive workers' compensation benefits for his injuries. Appellant essentially makes an equitable estoppel argument based upon the usual elements of that doctrine in Delaware (lack of knowledge by Appellant, reliance by Appellant on conduct of Appellee, prejudicial change of position by Appellant).

I need not address either of these issues to resolve this case, and, in the interest of judicial temperance and economy, I decline to do so. A narrower path is available. Both parties and the Board agree that if Appellant properly elected to have personal coverage as a sole proprietor under the WCA, he is eligible to receive workers' compensation benefits for his injuries. Thus, the issue becomes: did Appellant properly elect to have personal coverage as a sole proprietor under the WCA? This turns on whether Appellant was legally required to so elect in writing or on a prescribed form. It is undisputed that he did neither.

19 *Del. C.* § 2306(b) outlines how a sole proprietor elects coverage under 19 *Del. C.* §2308(b). It does not require him to write an email or otherwise submit an election coverage request in writing or on a prescribed form.[17]  Rather, the statute

---

[17] Carrier's reliance on forms published by the Delaware Compensation Rating Bureau ("DCRB")

14

simply states that, "in all cases," an employer who was otherwise excluded from the WCA – like a sole proprietor -- can elect to become included by purchasing coverage. Once coverage is purchased, the sole proprietor and all Employees are covered under "any and all" circumstances. The statute does not require a form, and it does not require a sole proprietor to request coverage in writing. Nor does Carrier require a sole proprietor to make a coverage election in writing.[18] Rather, the insured simply needs to tell his agent that he wishes to be covered.[19] It is the Carrier that bears responsibility for sending the relevant coverage form.[20] Most importantly, Carrier now concedes all this.

The Board stated as one of the two reasons for its Decision that the workers' compensation policy unambiguously did not cover Appellant. I disagree. The workers' compensation policy issued to Appellant contains a "Who Is Insured" section written by Carrier, which states that a partner may not be covered by the workers' compensation policy but provides no such warning as to a sole proprietor. The Extension of Information Page of the workers' compensation policy itself included Appellant as a "Named Insured."

The second reason stated by the Board for its decision was that Appellant was

---

tends to show that it is Carrier and the DCRB, and not the statute, that mandates the use of the forms.

[18] Deposition of Carrier's underwriter dated March 19, 2024, at 47 – 48.

[19] *Id.*

[20] *Id.*, at 48.

an experienced businessperson who was aware that he needed to elect workers' compensation coverage for himself but had not done so. I disagree. If anything, the expertise in insurance matters rested in Carrier, not Appellant. He is a small businessperson, not a corporate executive, and the sophisticated party is Carrier. For example, the Board stated that Appellant knew, or should have known, that he was not covered when he omitted his "salary" from the Carrier's audit forms. But, as a small businessperson, Appellant relied on his accountant to complete that portion of Carrier's audit forms.[21] As a sole proprietor, Appellant did not receive a salary. Instead, he received a draw. To the extent information about his draw was truly needed to calculate premiums, Carrier should have known the difference between a salary and a draw and should have clarified its audit instructions.

Moreover, the Board's finding that Appellant's salary omission caused Carrier to lack information needed to calculate his workers' compensation insurance premiums is not supported by substantial evidence. Carrier was fully able to calculate the premiums for the EPL, which purported to pay lost wages, medical bills, and permanent impairment compensation in the event of Claimant's incapacity or injury. These payments are comparable to those provided by the WCA.

For me, the reasonable conclusion is that Appellant elected coverage for himself by vocalizing his request to an authorized agent of Carrier. He asked to be

---

[21] Transcript of the April 24, 2024, Board Hearing, at 35-36, 48, 55.

16

covered. No one disputes that. But Carrier sold him an EPL which mimicked workers' compensation benefits. The sale of the EPL was in response to Appellant's election, which for me is the reasonable conclusion. The effort to turn an automobile mechanic, albeit a businessperson, into one knowledgeable about the intricacies of insurance, is window dressing. Therefore, under 19 *Del. C.* § 2306 and Carrier's own procedures, Appellant properly elected coverage. Verbal coverage election is sufficient. Carrier's agent had knowledge of Appellant's election of coverage, that knowledge was imputed to Carrier, and Carrier must provide coverage pursuant to the parties' agreement.

## CONCLUSION

I recognize that my role as an appellate court is limited, particularly as to factual findings in worker's compensation cases. However, this is one of those rare cases governed by *Levitt* and *Levin* where the Board's Decision does not square with the known facts. Nor does the Decision state what standard the Board applied to those facts in determining that Appellant was not covered by the workers' compensation policy. As discussed above, the proper standard is that no written election is required for Appellant to be personally covered as a sole proprietor under Employer's workers' compensation policy. Carrier conceded this on appeal, yet the Board has never been advised of this concession. Since the burden of proof is on Carrier, at a minimum this case would require remand to the Board for a new factual

finding upon application of the correct standard. However, I go further and reverse with directions to the Board to find that, by applying the correct standard (which Appellee agrees should govern) to the undisputed facts, Appellant made an oral election, which is sufficient to cover him under the workers' compensation policy. Appellant's Petition to Determine Compensation Due shall therefore be granted.

For the foregoing reasons, Appellant's appeal is **GRANTED**, and the decision of the Board is **REVERSED**.

**IT IS SO ORDERED.**

/s/ Craig A. Karsnitz
Craig A. Karsnitz

cc:    Prothonotary

18